IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **ELBA I. FALTO DE ROMAN**, <br><br>  Plaintiff, <br><br> v. <br><br> **MUNICIPAL GOVERNMENT OF MAYAGÜEZ**, *et al.*, <br><br>  Defendants. | Civil No. 12-1011 (BJM) |

## OPINION AND ORDER

Elba I. Falto de Román ("Falto") brings this action against the Municipal Government of Mayagüez ("the municipality"), Jose Guillermo Rodríguez in his personal capacity and as mayor of Mayagüez ("Rodríguez"), the members of the Governing Board[1] ("the Board") and the Policy Council[2] ("the Council") of the Head Start Program in their personal and official capacities, alleging employment retaliation under Title VII of the Civil Rights Act of 1964, retaliation under Law No. 115 of December 20, 1991 ("Law 115"), 29 L.P.R.A. §§ 194 *et seq.*, and violation of due process under both the Federal and Puerto Rico Constitution. Docket No. 5 ("Compl."). Falto also alleges harassment under Law No. 69 of July 6, 1985 ("Law 69") against Rodríguez.

Both sides moved for summary judgment. Docket Nos. 72 ("Pl. Mot."), 73 ("Def. Mot."). Each opposed the other's summary judgment motion. Docket Nos. 87, 91. Defendants also filed a reply (Docket No. 97), and plaintiff filed a surreply (Docket No. 102). The parties consented to proceed before a magistrate judge. Docket No. 39.

In light of the findings of fact and legal discussion set forth below, plaintiff's summary judgment motion is **GRANTED IN PART** and **DENIED IN PART**.

---

[1] Luis Olivares, Elena Martinez, Luis Ojeda, Carlos Gonzalez, Efrain De Jesus, Lisaira Diaz Nadal, and other unnamed individuals.

[2] Luis Balaguer, Elida Caraballo, Francisco Figueroa, Lourdes Feliciano, Nitzia Lamberty, Luis Ramos, and other unnamed individuals.

Defendants' summary judgment motion is **GRANTED** as to the retaliation and harassment claims, and otherwise **DENIED**.

## BACKGROUND

This summary of the facts is guided by the parties' Local Rule 56 statements of uncontested facts. *See* Docket Nos. 72-1, 73-1 ("Def. SUF"), 87-1, 87-3 ("Def. OSUF"), 91-1 ("Pl. SUF"), 97-1.[3]

In 2010, Elba Falto de Román was serving as the Director of the Head Start Program for the municipal government of Mayagüez, Puerto Rico. The Director position is a career service position. Pl. SUF ¶ 3. Jose Guillermo Rodríguez was the mayor of Mayagüez.

As Director of the Head Start Program, Falto was responsible for administering the program and entering into contracts with appropriate vendors. Around June 2010, Falto was preparing to sign a lease agreement with Rosaura Building Corporation ("RBC"). Pl. SUF ¶¶ 1–4. In a letter to Falto dated June 7, 2010, Rodríguez stated that all Program contracts required his approval before signing. *Id.* ¶ 5. A week later, Falto received a note from Rodríguez in which he ordered her not to sign the RBC lease agreement. *Id.* ¶¶ 7–8. On or about June 20, 2010, Falto met with officials of RBC and informed them of the mayor's orders. *Id.* ¶ 9; Def. SUF ¶¶ 12–13. Based on this communication and turn of events, RBC sued Rodríguez in federal court for political discrimination in June 2011.

---

[3] Local Rule 56 requires parties at summary judgment to supply brief, numbered statements of facts, supported by citations to admissible evidence. It "relieve[s] the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute," *CMI Capital Market Inv. v. González-Toro*, 520 F.3d 58, 62 (1st Cir. 2008), and prevents litigants from "shift[ing] the burden of organizing the evidence presented in a given case to the district court." *Mariani-Colón v. Dep't of Homeland Sec.*, 511 F.3d 216, 219 (1st Cir. 2007). The rule "permits the district court to treat the moving party's statement of facts as uncontested" when not properly opposed, and litigants ignore it "at their peril." *Id.*

Soon after the RBC case was filed, Rodríguez called Falto and asked whether Falto informed RBC of his order to not sign the lease contract.[4]  Falto admitted that she informed RBC of the mayor's order, and when questioned by Rodríguez, she stated she would testify truthfully as to what had transpired if called upon to testify in court.  Def. SUF ¶¶ 15–17.  Falto claims Rodríguez also yelled at her, saying women like her should not be in his government and that she was not trustworthy, faithful, and loyal.  Def. SUF ¶¶ 20, 22.

In December 2010, the Department of Health and Human Services, Administration for Children and Families, conducted an on-site monitoring review of the Mayagüez Head Start program.  Def. OSUF ¶ 7.  The review resulted in one deficiency finding and numerous noncompliance determinations.  Docket No. 87-4, at 16–19.  A deficiency is a "systematic or substantial material failure" in an area of performance that poses "a threat to the health, safety, or civil rights of children and staff."  *Id.* at 18.  A noncompliance determination is a less severe finding than a deficiency.  One area of noncompliance identified was the program's lack of training and technical assistance for members of the Governing Board and Policy Council.  *Id.* at 26.

In a February 2011 meeting, members of the Governing Board and Policy Council met to discuss their concerns regarding the administration of the Head Start Program, including Falto's complete lack of communication with the Governing Board and Policy Council.  Def. OSUF ¶¶ 22–24; Docket No. 88-1, at 1–3.  A similar meeting took place in early March 2011.  In July 2011, the Governing Board formally asked Falto to certify whether the deficiency and noncompliance determinations found during the 2010 on-site

---

[4] The court notes the convoluted and seemingly disingenuous nature of defendants' submissions of uncontested facts.  In their opposition to plaintiff's statement of facts, defendants summarily deny that the mayor had a telephone conversation with Falto about her communications with RBC and the lease signing.  Docket No. 87-1 ¶¶ 5–6.  But in defendants' own statement of uncontested facts, they appear to admit that the mayor had a telephone conversation with Falto regarding the RBC lease and he "got upset" when Falto told him she would testify truthfully in the RBC case.  Def. SUF ¶ 17.

monitoring review had been addressed.  Def. OSUF ¶ 28; Docket No. 88-1, at 10.  The Board asked Falto to respond within 24 hours of receipt.  However, Falto responded a month later, on August 12, stating that the Board knew that the review findings had been or were in the process of being addressed.  Docket No. 88-1, at 12.  Falto also objected to the Board's 24 hour deadline, and claimed the Board's request was an act of "harassment, persecution and disrespect."  *Id.*

On September 9, members of the Policy Council met to approve a decision by the Governing Board and the mayor to remove Falto from her position as Director.  Def. OSUF ¶¶ 31, 33; Docket No. 87-4, at 43.  In a letter dated September 12, 2011, the Governing Board informed the mayor of the Board and the Council's decision to remove Falto as Director of the Head Start Program.  Def. OSUF ¶ 35.  Subsequently, on September 28, 2011, Falto received a letter from Rodríguez in which he stated that she was being relieved of her duties as Director of the Head Start Program.  Pl. SUF ¶ 19; Def. SUF ¶ 26; Docket No. 72-8.  The letter also stated that the decision was reached by the Program's Governing Board and Policy Council in a meeting on September 9, 2011.  Pl. SUF ¶ 20.  According to the letter, the decision to remove her was due to a "withdrawal of trust."  Docket No. 72-8.  Prior to this decision, Falto was not notified of any workplace violations or disciplinary proceedings related to her performance as the program Director.  Pl. SUF ¶¶ 22–23.  Falto had no formal admonishments, warnings, or sanctions on her record.  *Id.* ¶ 24.

In early October 2011, Falto stopped receiving pay from the municipality.  In a filing to the Puerto Rico Department of Labor, the municipality reported that Falto's last date of employment was October 5, 2011.  Docket No. 72-21.

Falto did not file a complaint with the Equal Employment Opportunity Commission ("EEOC") or the Anti-Discrimination Unit of the Puerto Rico Department of Labor prior to filing this action in January 2012.  Def. SUF ¶ 24.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and "[a] 'genuine' issue is one that could be resolved in favor of either party." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). The court does not weigh facts, but instead ascertains whether the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Leary v. Dalton*, 58 F.3d 748, 751 (1st Cir. 1995).

The movant must first "inform[] the district court of the basis for its motion," and identify the record materials "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); R. 56(c)(1). If this threshold is met, the opponent "must do more than simply show that there is some metaphysical doubt as to the material facts" to avoid summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not prevail with mere "conclusory allegations, improbable inferences, and unsupported speculation" for any element of the claim. *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). Still, the court draws inferences and evaluates facts "in the light most favorable to the nonmoving party," *Leary*, 58 F.3d at 751, and the court must not "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon the facts of the record." *Greenburg v. P.R. Maritime Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987).

**DISCUSSION**

Falto claims that the municipality's decision to remove her from her career service position without pre-termination notice and hearing violated her right to due process under the Fourteenth Amendment. Pl. Mot. 1. In response, defendants argue that they

are entitled to summary judgment on qualified immunity grounds because Falto's allegations fail to establish a procedural due process violation. Def. Mot. 16–17. Defendants also contend that even if there was a deprivation of a protected property interest and a violation of due process, plaintiff is not entitled to any compensatory or equitable remedies because she would have been dismissed by the municipality for performance reasons. Docket No. 87, at 11–12.

In the amended complaint, Falto also alleges retaliation in violation of Title VII of the Civil Rights Act of 1964 and Puerto Rico Law 115, and harassment under Law 69. Defendants assert that Falto is barred from asserting these claims because she failed to exhaust administrative remedies prior to filing this action. I will first address the parties' due process claims and defenses, and then turn to plaintiff's retaliation and harassment claims.

I.   **Procedural Due Process**

The Due Process Clause prohibits a state from depriving a person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "This guarantee has both substantive and procedural components." *Pagán v. Calderón*, 448 F.3d 16, 32 (1st Cir. 2006). Procedural due process requires that before the state deprives one of a significant liberty or property interest, the affected individual must be given notice and a meaningful opportunity to be heard. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985); *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir. 1990). To state a procedural due process claim under § 1983, plaintiffs "'must identify a protected liberty or property interest and allege that the defendants, acting under color of state law, deprived [them] of that interest without constitutionally adequate process.'" *González-Droz v. González-Colón*, 660 F.3d 1, 13 (1st Cir. 2011) (quoting *Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 56 (1st Cir. 2006)). A cognizable property interest is one in which a person has "a legitimate claim of entitlement to," whether based on state law or federal statutes. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Under Puerto Rico law, public

service "career" employees have a protected property interest in their "continued employment . . . but not in the particular functions of his job." *Rojas-Velásquez v. Figueroa-Sancha*, 676 F.3d 206, 212 (1st Cir. 2012) (citations omitted). Thus, career employees must be afforded some process prior to termination. *Costa-Urena v. Segarra*, 590 F.3d 18, 23 (1st Cir. 2009).

### A.     Deprivation of Protected Property Interest

Defendants contend that there was no violation of due process because Falto was not deprived of a constitutionally protected property interest. Defendants claim Falto was never dismissed, that she remained an employee of the municipality, and was merely removed from her position as Director of the Head Start Program. Def. Mot. 15.

As a factual matter, I find that defendants have failed to raise a genuine issue of fact as to whether Falto was dismissed by the municipality. The record clearly establishes that the mayor, by a letter dated September 20, 2011, removed Falto from her role as the Head Start Program Director effective October 5, 2011. Docket No. 72-8. She was removed from the program's payroll five days later, on October 10, and she stopped receiving salary from the municipality after that first week of October. Docket Nos. 72-20, 72-23. In a subsequent filing with the Puerto Rico Department of Labor, the human resources department indicated that Falto's last day with the city was October 5, 2011. Docket No. 72-21. The defendants claim that Falto was not dismissed because the letter of September 20 does not use the word "dismiss," she wrongly interpreted the letter as a termination, and she essentially abandoned her post with the city by leaving on September 28 and never returning to work. Def. Mot. 15–16. The mayor also asserts that he did not intend to terminate Falto's employment with the municipality. Def. OSUF ¶ 45. But the municipality's response, or rather the lack thereof, to Falto's "abandonment" betrays its position. The fact that the municipality never communicated with Falto after September 28 to determine whether she intended to resume employment tends to support Falto's interpretation of the letter. If the mayor and municipality only intended to remove

her from her position as Director and retain her as an employee, they should have followed up to find out why a current employee of the city failed to show up to work. At the very least there should be some record indicating that her failure to report to work was the reason for her termination. Based on the evidence in the record, no reasonable juror could find Falto was not terminated.

Moreover, even assuming the actions of September 2011 did not constitute a complete termination of her employment, removing Falto from her position constitutes a deprivation of her protected property interest as a matter of law. Defendants correctly point out that Puerto Rico law only recognizes a protected interest in continued employment, not in the particular functions of a position. *Rojas-Velásquez v. Figueroa-Sancha*, 676 F.3d at 212. But that protected interest in continued employment must mean continued employment *in a position*, and not just employment in the abstract, if it is to have any real meaning. It is undisputed that Falto was relieved from her career service position as Head Start Director. She was not simply stripped of some duties or transferred from one position to another—she lost all of her duties and was left with none. Her compensation was not merely diminished—she was taken off payroll. None of the cases defendants cite go so far as to entirely remove an individual from their position and then claim that the employee's interest in continued employment was unaffected because they remained an employee with neither title nor function. *See, e.g.*, *Rojas-Velásquez*, 676 F.3d at 212 (finding no deprivation when plaintiff lost neither rank nor pay, and all that was alleged is the loss of job-related duties and certain perquisites); *Soto-Padró v. Pub. Bldgs. Auth.*, 675 F.3d 1, 8 (1st Cir. 2012) (rejecting plaintiff's asserted deprivation of a protected interest where a reorganization left plaintiff with a new position, fewer duties, and a smaller-pay scale).

Given the particular set of facts before me, I find that the municipality's decision to remove Falto from her position constitutes a deprivation of her interest in continued employment in her position.

### B.        Qualified Immunity

Qualified immunity is "an immunity from suit and not a mere defense to liability," designed to weed out "insubstantial claims" even before discovery has occurred. *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009). An individual acting under color of state law is entitled to qualified immunity where (1) the plaintiff fails to state a violation of a constitutional right, or (2) any such right was not "clearly established" when the alleged violation occurred. *Id.* at 269. Whether a right is "clearly established" depends on (a) whether the "law in general" was sufficiently clear at the time of the violation, and (b) "whether a reasonable person in the defendant's shoes would have understood" that he had violated a protected right. *Raiche v. Pietroski*, 623 F.3d 30, 35–36 (1st Cir. 2010) (quotation marks omitted). "Qualified immunity is an affirmative defense, and thus the burden of proof is on defendants." *DiMarco-Zappa v. Cabanillas*, 238 F.3d 25, 35 (1st Cir. 2001).

Here, the defendants only assert qualified immunity on the basis that Falto failed to allege deprivation of a protected interest. Def. Mot. 17. They do not contend that the right asserted by plaintiff was not clearly established when the alleged violation occurred. As discussed above, however, plaintiff has shown that the city's actions constitute a deprivation of a constitutionally protected interest. Therefore, defendants' only argument on qualified immunity falls flat, and they fail to meet their burden of proving entitlement to the defense.

Because there is no genuine issue of material fact as to the deprivation of Falto's protected interest in continued employment, and it is undisputed that no process was afforded prior to her termination, summary judgment as to liability is GRANTED against the mayor, Board members, and Council members in their personal capacities. Because the employment decisions of a mayor, including the unconstitutional discharge of municipal employees, constitute the official policy of the municipality, *Rivera-Torres v. Ortiz Vélez*, 341 F.3d 86, 103 (1st Cir. 2003), the municipality is liable as well.

## II.      Remedies for Procedural Due Process Violation

Defendants next argue that even if plaintiff prevails on summary judgment as to liability, she is not entitled to any remedy because the municipality would have removed her had a proper hearing been held.

To recover compensatory damages in a § 1983 claim, the plaintiff must prove that he suffered actual injury caused by the constitutional violation. *Davet v. Maccarone*, 973 F.2d 22, 29 (1st Cir. 1992). However, where the plaintiff establishes a procedural due process violation, the plaintiff is entitled to recover "nominal damages without proof of actual injury." *Carey v. Piphus*, 435 U.S. 247, 266 (1978); *Davet*, 973 F.2d at 29. As a corollary, if the employer can establish that the aggrieved employee would have been dismissed absent the constitutional violation, the employee is not entitled to compensatory or equitable remedies. *Whalen v. Mass. Trial Court*, 397 F.3d 19, 29 (1st Cir. 2005) (citing *Carey*, 435 U.S. at 260).

In this case, defendants rightly point out that although Falto had no formal workplace violations or disciplinary actions on her record, her performance was far from perfect. The 2010 on-site monitoring review of the Mayagüez Head Start Program resulted in a deficiency finding and numerous noncompliance determinations. Def. SUF ¶ 9. The record also shows that the Governing Board and Policy Council were already dissatisfied with Falto's performance in February and March 2011, months before Falto's confrontation with the mayor and the final decision to remove her from office. Def. OSUF ¶¶ 22–25. Falto's letter to the Board in August 2011, in which she accused the Board of engaging in harassment and persecution, indicated that the feelings of distrust were mutual. Def. OSUF ¶ 30. It is possible that the municipality would have removed Falto as Head Start Director had they provided notice and given Falto an opportunity to present her case. Alas, the municipality did not afford Falto an opportunity to present her side of the story, to explain why the 2010 on-site review resulted in various findings, and to determine whether the Governing Board and Policy Council were justified in their

complaints against Falto's administration of the program. On this record, there exists a genuine issue of material fact as to whether Falto would have been dismissed had the municipality afforded her a pre-termination opportunity to contest her dismissal. Accordingly, summary judgment on this issue is denied.

### III.     Retaliation and Harassment Claims

Lastly, defendants assert that Falto's Title VII claim is procedurally barred as she failed to exhaust administrative remedies before filing this instant action. Plaintiff admits that she did not file a complaint with the EEOC or Anti-Discrimination Unit, but contends that dismissal of her Title VII claim should be without prejudice under equitable tolling principles. Docket No. 91, at 8.

An employee asserting claims under Title VII must generally "first exhaust administrative remedies" before filing an action in court. *Franceschi v. U.S. Dep't of Veterans Affairs*, 514 F.3d 81, 85 (1st Cir. 2008). In Puerto Rico, a plaintiff must file an administrative charge within 300 days of the alleged unlawful employment practice. *Frederique-Alexandre v. Dep't of Natural and Envtl. Res.*, 478 F.3d 433, 437 (1st Cir. 2007); *see* 42 U.S.C. § 2000e-5(e)(1). Failure to do so generally bars suit, unless the court finds equitable estoppel or equitable tolling principles apply to excuse such failure. *Vera v. McHugh*, 622 F.3d 17, 29–30 (1st Cir. 2010). However, the First Circuit takes "a narrow view of equitable exceptions to Title VII exhaustion requirements." *Id.* at 30 (internal quotations omitted). Equitable relief is doled out sparingly, for example, when the employer actively misled the employee into missing the statutory deadline, or the court somehow led the plaintiff into believing she had done everything required. *Rys v. U.S. Postal Serv.*, 886 F.2d 443, 446 (1st Cir. 1989). Moreover, equitable tolling is not available where the plaintiff has engaged in "what is at best a garden variety claim of excusable neglect." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).

Falto contends that she is entitled to equitable tolling and dismissal without prejudice because she actively pursued her claims by filing this court action well within

the 300-day deadline. Plaintiff's argument turns Title VII's administrative exhaustion requirement on its head. At the outset, Falto provides no explanation for her complete failure to file an administrative charge with the EEOC or Anti-Discrimination Unit. And granting equitable tolling here would mean that the mere filing of a Title VII claim in a district court within 300 days of the alleged unlawful conduct is sufficient to excuse a plaintiff's total failure to abide by the administrative charge process setup by Congress. Accepting plaintiff's argument would allow "a garden variety claim of excusable neglect" to circumvent the carefully crafted administrative regime under Title VII. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (noting that the "administrative charge requirement serves the important purposes of giving the charged party notice of the claim and 'narrow[ing] the issues for prompt adjudication and decision'"). In short, Falto's failure to provide any explanation for her failure to exhaust administrative remedies warrants dismissal of her Title VII claim with prejudice.

### IV.     Supplemental Jurisdiction Over Puerto Rico Law Claims

All that remains is Falto's retaliation and harassment claims under Puerto Rico Law. A federal court exercising federal question jurisdiction may assert supplemental jurisdiction over state law claims where those claims arise from the same "nucleus of operative facts." *See Futura Dev. of P.R., Inc. v. Estado Libre Asociado de Puerto Rico*, 144 F.3d 7, 13 (1st Cir. 1998); 28 U.S.C. § 1367(a). Here, although plaintiff's procedural due process claim is related to her retaliation and harassment claims, the key facts underlying the retaliation and harassment claims (namely, circumstances surrounding the RBC litigation and alleged telephone call between the mayor and Falto) are largely irrelevant to her procedural due process claim. Rather, Falto's retaliation and harassment claims under Puerto Rico law arise from the same "nucleus of operative facts" as her Title VII claim. Moreover, even if the court had power to exercise jurisdiction over the retaliation and harassment claims, judicial economy and comity concerns warrant dismissal of the Puerto Rico law claims. *Redondo Const. Corp. v. Izquierdo*, 662 F.3d 42,

49 (1st Cir. 2011) (court should consider factors such as comity, judicial economy, convenience, and fairness in deciding whether to exercise supplemental jurisdiction over remaining claims).  Falto's procedural due process claim is being partially resolved on summary judgment, and all that remains is a hearing on causation and damages.  However, genuine factual disputes appear to predominate the retaliation and harassment claims.  *Supra*, at 3 n.4.  And Falto does not object to dismissal of the remaining retaliation and harassment claims without prejudice.  Docket No. 91, at 10.  Thus, the court declines to exercise supplemental jurisdiction over these claims.

## CONCLUSION

For the foregoing reasons, plaintiff's summary judgment motion is **GRANTED** as to liability on the procedural due process claim, and otherwise **DENIED**.  Summary judgment is **GRANTED** for defendants on the Title VII claim, and otherwise **DENIED**.  Plaintiff's retaliation and harassment claims under Puerto Rico law are **DISMISSED WITHOUT PREJUDICE**.

IT IS SO ORDERED.
In San Juan, Puerto Rico, this 5th day of February, 2014.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge